UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARK COLSTON,

          Plaintiff,          Case No. 2:09-cv-240

v.                                        Honorable Robert Holmes Bell

TRISHA MCLEOD,

          Defendants.
_____/

## OPINION

Plaintiff Mark Colston, an inmate currently confined at the G. Robert Cotton Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Trisha McLeod. Plaintiff's complaint alleges that between October 2008 and March 2009, he was sexually assaulted and sexually harassed by former Corrections Officer Trisha McLeod. Defendant McLeod provided Plaintiff with her home address and telephone number. Plaintiff alleges that Defendant McLeod instructed Plaintiff to write her romantic and sexual letters. Defendant McLeod told Plaintiff that she pulled his file and learned his family's addresses and telephone numbers. Defendant McLeod also threatened that she would write misconducts on Plaintiff if he ever told anyone about her conduct. Plaintiff alleges that Defendant McLeod told him that Wilcox investigated Defendant McLeod for having an over familiar relationship with a prisoner. She told Plaintiff that Wilcox cleared her of all charges after she paid him off.

Plaintiff was talking with another prisoner on March 13, 2009, when Defendant McLeod approached him and asked to speak with him alone. Defendant McLeod asked Plaintiff if

he had a letter for her. Plaintiff gave her a letter. Defendant McLeod then stated that she was glad that Plaintiff was following her instructions. She then read the letter and informed Plaintiff that she was angry with the content of the letter. She threatened that if Plaintiff stopped their romantic and sexual relationship, she would give to Wilcox a copy of an earlier letter Plaintiff had written to Defendant McLeod. She warned Plaintiff not to disclose their relationship with anyone else or she would pay off Wilcox and make sure that Plaintiff was punished. She then instructed Plaintiff to write her a letter on March 16, 2009.

Plaintiff did write a letter to Defendant McLeod on March 16, 2009. That letter informed Defendant McLeod that Plaintiff was transferring the next day to a different facility and when he arrived he planned to tell officials about Defendant McLeod's conduct. On that date, Defendant McLeod went to Wilcox and informed him of her improper relationship with Plaintiff. She admitted to hugging Plaintiff and that Plaintiff had kissed her on the head. Wilcox started an investigation and prepared a formal complaint against Defendant McLeod to prevent her from entering the facility during the investigation. He also referred the matter to the Michigan State Police.

On March 17, 2009, Wilcox and a detective spoke with Plaintiff about the information obtained from Defendant McLeod. Plaintiff told the detective that he did not mean any threatening statement contained in the letters that he wrote to Defendant McLeod. The detective told Plaintiff that he would not recommend that criminal charges be filed against Plaintiff. Plaintiff states that Wilcox informed him that Plaintiff could not be punished by correctional officials because Plaintiff was the victim. He further informed Plaintiff that Defendant McLeod had violated policy and would be subject to criminal charges for her conduct. Defendant McLeod resigned from the MDOC on March 17, 2009, in anticipation of termination from her employment. On March 18, 2009, Wilcox wrote misconduct tickets on Plaintiff for threatening behavior and sexual misconduct. Plaintiff

believes that it was improper for him to receive the misconduct tickets because he was clearly the victim. Further, Plaintiff believes that he should be treated no differently than female prisoners who are victims of sexual assault. Plaintiff was found guilty of both misconduct violations. The hearing officer explained:

> EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT:
>
> The prisoner is present and the misconduct report is reviewed with him along with his refusal to make a statement. Note from H/I, the letters which are found to be confidential for the security of the facility and the safety of the officer, his questions and Inspector's Memo. Prisoner Colston states that he did type the letters and he did engage in acts with her because she forced him to from October of last year until March of this year when he said that he wanted to end it he was getting a parole. He said that he did not report the forced sexual acts earlier because she threatened to say he lied and was stalking her. Prisoner has nothing further to add. No further evidence is requested or is needed. Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later today.

> REASONS FOR FINDINGS:
>
> THREATENING BEHAVIOR: Prisoner Colston wrote two letters to Officer McLeod saying in part that if she did not do what he wanted to do then he would report that she was smuggling drugs into the facility and repeatedly said that he knew where she lived as did his family and that she could not hide even if she quit on 3-16-09 at 1630 hrs. I find that these statements by their very nature express an intent to physically harm the officer. Prisoner Colston's statement is not believed because it makes no sense that he would willingly write and keep letters that are threatening the officer upon her instruction and against his will because she threatened to say he was stalking her if he told the facility or anyone else what they were doing and did not write the letters. If she truly had been forcing herself on him for 5 months and was making him write threatening letters then he would have told before he even wrote the letters because as long as he was not stalking her and did not write any letters to her then there would be no proof of stalking so he would have nothing to worry about and he would not be at the same facility as her. The Inspector is clear and logical in his statement and is found to be credible. The charge is upheld.
>
> SEXUAL MISCONDUCT: Prisoner Colston hugged and kissed Officer McLeod before 3-16-09. I find that this was clearly touching of the other that was done for the purpose of sexual gratification. Prisoner Colston's statement is not believed for the reasons stated above. The Inspector is clear and logical in his statement and is found to be credible. The charge is upheld.

On March 26, 2009, Plaintiff's parole was rescinded and he was scheduled to see the parole board. On March 27, 2009, Plaintiff was reclassified and transferred to a level III facility. Plaintiff lost 180 days of credit from his maximum sentence.

Plaintiff states that he was originally scheduled to be released no later than February 2011. Plaintiff's current maximum release date is August 8, 2011. Plaintiff's parole was denied on June 6, 2009. Plaintiff is currently housed at the Cooper Street Correctional Facility in Jackson, Michigan. The Cooper Street Correctional Facility is a level I facility housing prisoners getting ready to transition to parole or release from confinement.

Plaintiff claims that Defendant McLeod's actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is the Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

5

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant McLeod claims that she is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues

6

shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendant McLeod asserts that Plaintiff never filed a grievance raising the alleged sexual misconduct. However, in his response to the motion for summary judgment, Plaintiff offers a copy of a step III grievance response to No. HTF-09-03-172-28e, amended 17C, which addresses Plaintiff's claim that he was sexually harassed by Defendant McLeod from October of 2008, until

7

March of 2009. (Docket #27, Exhibit A.) Therefore, it appears that Plaintiff did exhaust his administrative remedies and that Defendant is not entitled to summary judgment on this basis.

As noted above, Plaintiff claims that Defendant McLeod violated his Eighth Amendment rights. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's

8

penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Defendant McLeod states that she is entitled to summary judgment because the conduct at issue does not rise to the level of an Eighth Amendment violation. In support of this assertion, Defendant McLeod attaches a copy of Jeffrey Wilcox' affidavit, in which he attests that

9

Defendant told him that Plaintiff had approached her about four months prior to March 2009, and had told her that he knew how the "corrupt" system worked. Plaintiff told Defendant that he had heard that she almost lost her job because of her lifestyle, as she was living with a female. Plaintiff told Defendant McLeod that he could help her legally. Defendant McLeod gave Plaintiff her home address early on and Plaintiff began writing her letters, telling her how much he loved her and that he wanted to be with her when he got out of prison. Defendant reported receiving two to three letters a week, delivered to her by Plaintiff and other inmates hidden in a dictionary. At some point, Plaintiff became threatening, claiming that Defendant was attempting to set him up with the Inspector, and that telling her that if she said anything about his letters, Plaintiff would accuse her of bringing drugs into the prison. Plaintiff then began writing letters to Defendant, claiming that she was bringing drugs into the prison for him to sell, and listing her home address. Plaintiff also complained that he did not like the way she was treating his family, who had contacted her by phone. Inspector Wilcox attests that Plaintiff never told him that Defendant had grabbed or rubbed his penis and buttocks during shakedowns. (Defendant's Exhibit 4, ¶¶ 4, 9.)

Defendant also offers a copy of the report prepared by Michigan State Police Sergeant William H. Smith, which states that he interviewed Defendant on March 17, 2009. During the interview, Defendant indicated that Plaintiff had told her that he would use the fact that he had her address if they could not be together. Defendant stated that when she gave Plaintiff her address, she had been vulnerable because she wanted to gain custody of her partner's son and thought that Plaintiff could give her advice on how to proceed. (Defendant's Exhibit 2.)

Sergeant Smith also interviewed Plaintiff, who admitted that the only true physical contact that he had with Defendant was a hug and a kiss on approximately three separate occasions. These incidents occurred at the gym, in the office, and occurred between October of 2008 and January of 2009. Sergeant Smith advised Plaintiff that the letters he had written were threatening
10

in nature and that it appeared he was trying to extort Defendant by exposing her to prison staff unless she complied with what he wanted. Sergeant Smith advised Plaintiff that he would be forwarding the information to a prosecutor to determine whether the letters would substantiate a charge against him. (Defendant's Exhibit 2.)

In response to Defendant's motion, Plaintiff offers the affidavit of other prisoners, who attest that they passed letters to Defendant on Plaintiff's behalf, and that Plaintiff expressed in the letters that he did not want to be sexually involved with Defendant. (Plaintiff's Exhibit D and E.) In addition, Prisoner Boyd observed Defendant kissing Plaintiff while sticking her hand down his pants and, on another occasion, overheard her tell Plaintiff that she enjoyed touching his body during a shakedown. (Plaintiff's Exhibit D.) Finally, Plaintiff attests that Defendant instructed him to hug and kiss her while she stuck her hand down his pants and fondled his penis on three separate occasions. Plaintiff attests that during pat downs, Defendant rubbed his buttocks in a circular motion and grabbed them, as well as his penis. (Plaintiff's Exhibit F.)

Defendant states that even if Plaintiff's allegations that she rubbed his buttocks and grabbed his penis during pat-downs, and that she had twice hugged and kissed him, such conduct does not rise to the level of an Eighth Amendment violation. However, based on a review of the record, it is clear that the conduct asserted by Plaintiff constitutes more than a "isolated, brief, and not severe" incident. Therefore, there is an issue of fact regarding whether Defendant violated Plaintiff's Eighth Amendment rights.

Defendant states that she is entitled to summary judgment on Plaintiff's due process claim. Plaintiff claims that his due process rights were violated because Inspector Wilcox agreed to stop investigating Defendant if she resigned from her job and that this violated his due process rights. However, Plaintiff has no right to have his claims investigated. *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio, Sept. 18, 2002); *Langworthy v. Dean*, 37 F. Supp. 2d 417, 422 (D.

Maryland, Feb. 8, 1999) (both citing *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195, 109 S. Ct. 998 (1989)). "No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated at all." *White*, 217 F. Supp. 2d at 841-42; *Langworthy*, 37 F. Supp. 2d at 422. The conclusion that such a right does not exist is supported by the fact that there is no federally protected right to compel the prosecution of a criminal activity. *Diamond v. Charles*, 476 U.S. 54, 63, 106 S. Ct. 1697, 1704 (1986); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149 (1973); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 691-92 (6th Cir. 1994). Therefore, because Plaintiff has not shown the deprivation of a federally protected right, his due process claim is properly dismissed.

Plaintiff asserts that his equal protection rights were violated because he was treated differently than a female prisoner. The court notes that being a male does not qualify Plaintiff as a member of a suspect class. Moreover, to establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Plaintiff has failed to allege any facts indicating such a motivation.

Alternatively, Defendant moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances

two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his due process or equal protection rights were violated, Defendant is entitled to qualified immunity on these claims.

However, as noted above, there is an issue of fact regarding whether Defendant violated Plaintiff's Eighth Amendment rights by sexually harassing him over a period of several months. Because such conduct is sufficient to violated Plaintiff's constitutional rights, Defendant is not entitled to qualified immunity on this claim. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

In light of the foregoing, the court concludes that Defendant is entitled to summary judgment on Plaintiff's due process and equal protection claims, but that she is not entitled to summary judgment on Plaintiff's Eighth Amendment claim. Accordingly, it is recommended that defendant's Motion for Summary Judgment (docket #19) be granted, in part, and denied, in part.

An Order consistent with this Opinion will be entered.


Dated: February 17, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE